### WERNER v. WERNER et al.

(Supreme Court, Appellate Division, First Department. March 8, 1912.)

DIVORCE (§ 129*)—ACTION—SUFFICIENCY OF EVIDENCE.
  Evidence in a divorce action *held* insufficient to sustain a finding of adultery between defendant and co-respondent.

  [Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 411–441, 454; Dec. Dig. § 129.*]

Appeal from Special Term, New York County.

Divorce action by Katharine Werner against Charles A. Werner and another as co-respondent. From an interlocutory judgment of divorce, co-respondent appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, McLAUGHLIN, and MILLER, JJ.

Gregg & Frank (George A. Gregg, of counsel), for appellant.
Frederick W. Block, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CLARKE, J.   The complaint alleges upon information and belief that on or about Thursday of each and every week during the years 1905–1907, and until the autumn of 1908, the defendant committed adultery with one Anna Thiel at the home of Mrs. Anna Baumann in Woodside, Queens county, N. Y.   No attempt was made to prove any transaction under that allegation.   The third paragraph of the complaint alleged upon information and belief that between the 1st day of January, 1905, and the commencement of this action, the defendant upon many occasions committed adultery with said Anna Thiel, but at what particular times and places defendant is unable to state.   The defendant, the husband, after interposing a verified answer, withdrew his counsel and submitted to a decree, being present in court upon the trial and being examined by the plaintiff as to the condition of his property.   A defense was interposed by the co-respondent, Mrs. Thiel, and the appeal is taken by her.

[1] Plaintiff served notice that upon the trial she would undertake to prove, under the general allegation in paragraph 3 of the complaint, a specific act of adultery committed by the defendant with the co-respondent named in the complaint in November, 1908, at 253 Arlington avenue, in Jersey City, N. J.   This was the only specific act about which evidence was given, and this was given by Emily Dunckelmann, a sister of Mrs. Thiel, and, if believed, was enough to establish the cause of action.   She testified that her sister and Mr. Werner called at her house together.

"I was just going shopping, and I said I would stay at home, so they told me to go ahead, that I should go out shopping.   I intended to go over to New York to the stores, which they said I should do, that they would wait; but on the way I changed my mind and went down to Jersey City. * * * And returned in I guess between an hour and a quarter and an hour and a half. * * * When I left home, there was nobody in the house except Mr. Werner and Mrs. Thiel. * * * When I came back I found them in my room, * * * my own private bedroom.   When I came up to the door, the door was closed.   When I opened the door and looked in, the defendant and the co-respondent stood in front of my bed.   Mr. Werner was in underclothing. That is all he had on.   Mrs. Thiel was clothed the same.   She only had on what I call a chemise. * * * The bed was mussed up.   When I entered the room, I didn't say anything.   I reproached my sister, and said was not she afraid that Mrs. Werner would ever hear of such conduct; that I didn't like anything like that going on, and she said if Mrs. Werner ever found out about their conduct that they would leave town and she could not do anything. * * * After I found them in the room, I went downstairs and prepared coffee. * * * The defendant and Mrs. Thiel both came downstairs after that.   They had coffee with me.   We had coffee and chatted a while, and then they left.   They called again after that * * * several times."

The cross-examination of Mrs. Dunckelmann shows:   That she left her husband after living with him about five years.   That there were no children of her marriage.   She refused to answer whether she had any children on the ground that she might incriminate herself.   That she had a boarder by the name of Martin with whom she was living.   That she had been known for a long time as Mrs. Martin. That she had lived with different men and under different names. She testified:

"I thought my sister was able to take care of herself. I didn't think it was a proper thing for my sister to be doing. I would not have reproached her. I didn't consider it proper. I didn't say, 'Be careful,' but I said, 'Aren't you afraid?' It was not my business. I only told her I did not like it being done in the house. I mean what I suspected—that she had been committing adultery with Mr. Werner. And the only impression that made on my mind was, 'Aren't you afraid of Mrs. Werner?' And then I went downstairs and made coffee for my sister and Mr. Werner, and they came down, and I sat there and discussed matters in general with them."

And there is a letter of hers in evidence which shows that she had little or no morality. But why should a sister testify against a sister? It seems that all of Mrs. Thiel's family, her mother and sister and brother, had been in litigation with her, first over her husband's will, in which she had succeeded against them all, and then in a suit by her for money loaned which she also won, and that she had a suit for slander against various members of her family where they had called her a false will maker. It seems further that, not only was this suit brought for divorce upon information given to the plaintiff by Mrs. Baumann, Mrs. Thiel's mother, but that it was brought by the Baumanns' attorney; that upon plaintiff's own testimony the information upon which was made the allegations of the complaint of the acts of adultery upon every Thursday for four years had not been given to her at all at the time she verified the complaint. It also appears that an action for $10,000 for the alienation of her husband's affections was also brought against her by Mrs. Werner, by the same attorney who appears for plaintiff herein; that the plaintiff and the defendant still live in the same house; that a mutual arrangement without the order of the court was made for alimony; that the defendant Werner had been brought up in the family of the Baumanns and had been brought over to this country by them. The co-respondent positively and absolutely denies all acts of adultery anywhere at any time.

The learned court in his opinion said:

"In view of the relations between the defendant and the co-respondent indicated by her letters to him, and testified to by the witness Wulff, I am satisfied with the testimony as to the alleged act of misconduct in Jersey City."

Mrs. Thiel explains the letter referred to by stating that there had been a quarrel over some money which she had loaned, and that she was asking forgiveness for the language she had used; that their relations had been that of brother and sister for all these years, and there was nothing else in it.

The testimony of Mrs. Wulff was admitted under objection, and was to the effect that she was the proprietress of the Ardsley Hotel on the corner of Fourth avenue and Thirty-Second street, and that she had seen defendant Werner maybe three times a month and sometimes twice. "I saw him a dozen times, three or four years ago." That he would come in the afternoon and engage a room, and that Mrs. Thiel would come there and meet him, and that they would go into the room and spend two or three hours. She said they were there going for a couple of years. It is claimed that Mrs. Thiel was pointed out to this witness in the courtroom by these other women,

that her testimony was inadmissible to show an act because not particularized, and was unbelievable in any event.

There is another suspicious matter. Mrs. Wulff testified, on being recalled for further cross-examination:

"Before Mrs. Werner brought those pictures to me" (referring to the photograph of the defendant and Mrs. Thiel) "I had a conversation with Mr. Werner, the defendant, * * * in September last, 1910, up at the Ardsley Hotel. It was in the afternoon. He said, 'You know me well,' and he said, maybe some day he got some trouble, and the case comes up, some divorce case. Mr. Werner said this. He said, 'You have to say that I was good and you know us well.' I can't swear that he said he wanted a divorce, but all these things he told me. * * * Q. Now, what did you say to him when he said that he would want you to come to court and testify? A. He said to get notice and I would put you on for witness. Q. He said that his wife would put you on for witness? A. He didn't say his wife. He said, 'You get notice that you will be put on as witness.' Q. And that you will have to testify that I was here with that lady? A. Yes. Q. Is that what he said to you? A. That is what he said. Q. There is no doubt in your mind that he said that to you? A. No. Q. And after that Mrs. Werner called at your place with these pictures? A. Yes."

We have reached the conclusion that a judgment of divorce should not be granted upon this record. There are too many suspicious and unexplained matters. The previous bitterly contested family litigation; the sweeping allegations of misconduct, information of which was furnished by the mother, with no attempt to substantiate any of them in court; the husband and wife continuing to reside in the same house; the action for money damages for alienation of affections; the withdrawal of all defense by the husband after having submitted a verified answer in which all the charges were denied; the character of the only witness who testified to any overt act; the production of the keeper of the hotel as a witness by the husband; the furnishing photographs to her and the pointing out of the co-respondent in court —are some of the things which warrant this court in refusing to accept the testimony as to the one act upon which alone a judgment could be predicated.

The interlocutory judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.